**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THUNDER MARINE, INC.**

      **Plaintiff,**

**v.**                                             **Case No. 8:06-CV-384-T17 EAJ**

**BRUNSWICK CORPORATION, a**
**Delaware Corporation**

      **Defendant.**

_____/

**ORDER DENYING MOTION TO SUPPLEMENT,**
**MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER VENUE**

      **THIS CAUSE** is before the Court on Defendant's Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue, filed on March 9, 2006, (Dkt. 4).  The Court also has before it Plaintiff's Response to Motion to Dismiss for Improper Venue, filed on March 24, 2006, (Dkt. 8), Plaintiff's Amended Motion to Supplement Response, filed on April 18, 2006, (Dkt. 12), and Defendant's Opposition to Motion to Supplement, filed on April 20, 2006, (Dkt. 13).  After considering the motions and responses thereto, this Court DENIES the motions.


**I.**      **Factual and Procedural Background**

      Plaintiff, Thunder Marine, Inc., ("Thunder Marine"), a Florida corporation and marine dealership, filed a complaint in state court[1] on March 1, 2006, asserting claims against Defendant, Brunswick Corporation, ("Brunswick"), a Delaware corporation and marine manufacturer, for breach of fiduciary duty, unfair competition, and violation of Chapter 501.201 of the Florida Deceptive and Unfair Trade Practices Act.

      Thunder Marine owns and operates a marine dealership in Pinellas County selling and servicing various boats, cruisers and yachts, including the Brunswick brand.  Thunder Marine

---

[1] The complaint was originally filed in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, case number 06-1450CI-11.

contracted with four subsidiaries[2] of Brunswick for the sale, display, and service of Brunswick products and was named Brunswick's 2005 Dealer of the Year for Best Business Practices. A necessary component of Thunder Marine's business is the service and maintenance of the yachts it sells, and to accomplish this Thunder Marine made arrangements with the Great American Marina (the "Marina")—purportedly the only service facility available to Thunder Marine in Pinellas County.

In February 2005, Thunder Marine alleges it informed Brunswick of its desire to purchase the Marina through Brunswick's Acquisition & Partner Program which encourages joint ventures between Brunswick and its dealers for purchasing real estate. Thunder Marine claims that it provided proposal documentation to Brunswick and alleges that Brunswick agreed to go ahead with the venture. Believing that a deal had been struck, Thunder Marine claims it proceeded to share with Brunswick sensitive information and business strategies for the purchase, development and marketing of the Marina.

Notwithstanding its purported agreement with Thunder Marine, Brunswick allegedly went ahead and purchased the Marina in partnership with Marine Max, Thunder Marine's main competitor. Thunder Marine subsequently sues for damages and claims that its opportunity to solely purchase the Marina, which it had fully intended to do if Brunswick did not express interest in a joint venture, was undermined, and, its ability to use the Marina to service the yachts sold to its customers has been terminated.

On March 8, 2006, the case was properly removed to this Court via notice by Brunswick, and, on March 9, 2006, Brunswick filed its motion to dismiss for improper venue and alternative motion to transfer venue based on forum selection clauses specifying the United States District Court for the Eastern District of Tennessee which were included in various dealer agreements between Thunder Marine and subsidiaries of Brunswick.

In its response, Thunder Marine claims that the forum selection clauses in its dealer agreements with the four Brunswick subsidiaries do not apply to the current tort claims against Brunswick because Brunswick is not a party to those dealer agreements. Thunder Marine further contends that the tort claims do not arise out of the dealer agreements but are based on an independent joint venture entered into by the parties involving the purchase and development of waterfront real estate and, therefore, the claims are not governed by the forum selection clauses.

---

[2] The four subsidiaries are Maxum Marine, a division of Brunswick Family Boat Co., Inc., Bayliner Marine, a division of Brunswick Family Boat Co., Inc., Trophy Sportfishing Boats, a division of Brunswick Family Boat Co., Inc., and Baja Marine Corporation.

CASE NO. 8:06-CV-384-T17 EAJ

Thunder Marine also argues that it is not suing any of the subsidiaries with which it contracted and, for that reason, Brunswick cannot assert the rights of such subsidiaries.

Furthermore, Thunder Marine moves to supplement its response to Brunswick's motion to dismiss and alternative motion to transfer after receiving a letter from Brunswick Family Boat Co., Inc. stating that Thunder Marine's intentions as to the dealer agreements are independent of the tort claims. Brunswick opposes this Court's consideration of the letter on the grounds that Local Rule 3.01(b) bars such submissions, and, that, since Thunder Marine argues in its response that Brunswick Family Boat Co., Inc. is a separate entity from Brunswick, then, Thunder Marine should not also be able to argue that a letter from this separate entity contains an admission by Brunswick that the dealer agreements are independent of the tort claims.

## II.    Motion to Supplement

The Court in its discretion may consider supplemental evidence introduced by a party during the pendency of a motion to dismiss where such evidence was discovered subsequent to the party's submission of a response. *See Prieto v. Storer Communications, Inc.*, 152 F.R.D. 654, 655 (M.D. Fla. 1994) (holding that a court does not abuse its discretion where it denies a motion to reconsider which is supported by evidence that "*could have been introduced during the pendency of the motion* for summary judgment") (*emphasis added*).

Here, however, it is not necessary for the Court to consider the evidentiary letter at issue due to the Court's denial of Brunswick's motion to dismiss and motion to transfer venue herewith.   Therefore, the Plaintiff's Motion to Supplement Response to Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue is hereby DENIED as moot.

## III.   Motion to Dismiss for Improper Venue

### A.    Legal Standard and Discussion

When a case is properly removed on diversity grounds to a federal district court in the district where the state action was pending, venue in that district court is established as a matter of law, and a defendant cannot thereafter move to dismiss the action on venue grounds even if venue was improper when the case was initially filed.  28 U.S.C. § 1441(a); *Hollis v. Florida State University*, 259 F.3d 1295, 1299 (11th Cir. 2001) (finding that venue is fixed and the general venue provision of 28 U.S.C. § 1339 does not apply where there has been a proper

removal under 28 U.S.C. § 1441(a)); *see Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665 (1953) ("[The removal statute] expressly provides that the proper venue of a removed action is the district court of the United States for the district and division embracing the place where such action is pending"). Furthermore, the Court, in *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002), specifically held that in a removed case the parties' contractual forum selection clause cannot determine venue that is prescribed by statute, and, therefore, a defendant cannot challenge such venue as improper.

While the Court, in *Lambert v. Kysar*, found that the district court properly dismissed an action where the removing defendant claimed venue was improper based on a forum selection clause, the Court stated that the defendant in that matter had "properly preserved" its right to challenge venue by first pleading the venue issue in state court prior to removal and then pleading the issue again in federal court after removal. 983 F.2d 1110, 1112-1113 (1st Cir. 1993). And, although the *Lambert* Court found that a valid forum selection clause can cause venue to be improper under the removal statute, § 1441(a), as well as under the general venue statute, § 1391, *Id.*, the Eleventh Circuit has not so found. *Hollis*, 259 F.3d at 1300 (declining to discuss the forum selection clause issue brought forth in *Lambert*); *see Serrano v. U.S. Fire Ins. Co.,* WL 33348220, *2 (W.D. Tex. Nov. 7, 2000) (finding that challenges to venue in state court cannot be preserved after removal to federal court and that the only way to challenge venue without infringing on the removal provisions of 28 U.S.C. § 1441(a) is through the discretionary transfer of venue provision of 28 U.S.C. § 1404(a) rather than 28 U.S.C. § 1406(a) which only can be used for cases where venue is improper); *see P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, at 807 (11th Cir. 2003) (finding that enforcement of a forum selection clause in a diversity jurisdiction case is governed by 28 U.S.C. § 1404(a), the statute for transfer of venue).

The Court of Appeals for the Eleventh Circuit, in *Lipcon v. Underwriters at Lloyd's London*, did find that a motion to dismiss for improper venue is appropriate in order to challenge venue based on a forum selection clause that specifies an *international* forum. 148 F.3d 1285, 1290, n. 3 (11th Cir. 1998). However, the *Lipcon* Court did not have the option to entertain a motion to transfer venue to a forum outside the jurisdiction of the United States. *Id.*, *see Kerobo*, 285 F.3d at 536 (stating that a motion to transfer venue based on a forum selection clause is not available when the contractual forum selection is an international forum). Further, *Lipcon* in citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29-30 (1988), does not presume to bring a motion to dismiss for improper venue based on a forum selection clause out of the auspices of

the general venue statute, § 1391, or the removal statute, 1441(a).  *See also id*. at 28, n. 8 (finding that venue is *not* improper when it is sanctioned by statute); *Hollis*, 259 F.3d at 1300 (holding that a removing defendant can seek transfer of venue under § 1404(a) to avoid infringing on the removal statute of 1441(a), but *cannot* move to dismiss).  The case simply analogizes that the *Ricoh* Court, finding that the transfer statue, § 1404(a), empowers district courts to use their discretion to enforce forum selection clauses, supports the *Lipcon* court finding that a motion to dismiss due to a forum selection clause is cognizable as a motion to dismiss for improper venue in certain limited circumstances where transfer does not apply. *Lipcon*, 148 F.3d at 1290; *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D. Fla. 2000) (applying the finding in *Lipcon* where the forum selection clause designated a foreign country for litigating disputes).

In the matter before the Court, Brunswick properly removed the case to federal court on diversity grounds, it being a Delaware corporation and Thunder Marine a Florida corporation, and immediately thereafter filed a motion to dismiss for improper venue based on a forum selection clause designating the Eastern District of Tennessee as the agreed upon forum.  Since 28 U.S.C. § 1441(a) provides that venue is established in the district court of the United States for the district and division where the state action is pending, venue is, accordingly, fixed in the United States District Court for the Middle District of Florida, Tampa Division—the district and division embracing Pinellas County where the state court action was filed.  Furthermore, since the forum selection clause does not designate an international forum, Brunswick has no basis to move to dismiss for improper venue.  Therefore, Brunswick's motion to dismiss for improper venue is DENIED.

IV.     **Alternative Motion to Transfer Venue**

A.     **Legal Standard**

While a removing defendant in a diversity case cannot move to transfer for improper venue under 28 U.S.C. § 1406, such a defendant does not waive its right to challenge venue based on a forum selection clause via a motion to transfer venue under 28 U.S.C. § 1404(a). *Hollis*, 259 F.3d at 1300 (holding that a removing defendant can seek transfer of venue under § 1404(a) to avoid infringing on the removal statute, 1441(a), which establishes that venue is proper); *Serrano,* WL 33348220, at *2 (finding that a motion to transfer venue is the *only* way

for a removing defendant to challenge venue) (*emphasis added*); *see Ricoh Corp.,* 487 U.S. at 32 (holding that the transfer statute, § 1404(a), controls where a defendant in a diversity suit challenges venue due to a forum selection clause); *Kerobo,* 285 F.3d at 535 (interpreting *Ricoh* to mean that a motion to transfer for improper venue is *never* appropriate where venue is prescribed by statute) (*emphasis added*); *see also P&S Bus. Machs., Inc.*, 331 F.3d at 807 (finding that enforcement of a forum selection clause is determined under 28 U.S.C. § 1404(a)).

Pursuant to 28 U.S.C. 1404(a), a district court has authority to transfer an action to another division or district where it might have been brought for the convenience of parties and witnesses and for the interests of justice.  The Supreme Court states that the procedural vehicle of 28 U.S.C. § 1404(a) is appropriate for a motion to transfer venue based on a forum selection clause because it is sufficiently broad in that it allows district courts great discretion in making decisions on a case-by-case basis.  *Ricoh Corp.,* 487 U.S. at 29.  In so doing, a court may consider convenience, judicial efficiency, the plaintiff's choice of forum, and any forum selection clauses the parties agreed upon.  *See Sparling v. Hoffman Construction,* 864 F.2d 635, 639 (9th Cir. 1988).

In this case, Brunswick moves alternatively to transfer venue to the Eastern District of Tennessee based on forum selection clauses existent in agreements between its subsidiaries and Thunder Marine.  However, Brunswick has not provided a legal basis for its motion.  Since 28 U.S.C. 1406(a) allows for dismissal or transfer where venue is improper, that statutory remedy is not available to Brunswick because, here, venue has been prescribed by the removal statute, § 1441(a), and, therefore, cannot be improper.  *Polizzi,* 345 U.S. at 665.  Thus, the Court will proceed with the presumption that Brunswick intended to file its motion to transfer venue pursuant to the discretionary transfer statute of 28 U.S.C. 1404(a).  *Serrano,* WL 33348220, at *2 (finding that 28 U.S.C. § 1404(a), as opposed to 28 U.S.C. § 1406(a), provides the only proper vehicle to challenge venue without contravening the removal provision of 28 U.S.C. § 1441).  In so doing, this Court has the discretion to consider fairness to and convenience of the parties, judicial economy, and any contractual agreements made by the parties.  *Ricoh Corp.,* 487 U.S. at 29-31.

### B.    Choice of Law

Congress has enacted statutes and rules of procedure that steer federal courts in deciding questions of venue in diversity cases, and, therefore, questions regarding the enforcement of forum selection clauses are deemed procedural issues subject to federal law.  *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (11th Cir. 1987), *aff'd on other grounds*, 487 U.S. 22

**CASE NO. 8:06-CV-384-T17 EAJ**

(1988); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2nd Cir. 1990); *ADT Security Svcs., v. Apex Alarm, LLC*, WL 1318444, *5 (D. Colo. May 9, 2006) (finding that federal law controls the determination of the scope of a forum selection clause).

      **D.    Discussion**

      Brunswick moves to transfer venue based on contractual forum selection clauses in four separate agreements between its subsidiaries and Thunder Marine relying on *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 10 (1972), an admiralty case involving an international forum clause.  In *Bremen*, the Supreme Court held that contractual forum selection clauses are prima facie valid and the party opposing the forum must show that the unreasonableness or inconvenience of the forum will deny the party its right to present its case.  *Id*. at 1, 18. Brunswick asserts that Thunder Marine's significant financial resources, the fact that Thunder Marine freely entered into the agreements, and the convenience of the Tennessee forum to Brunswick's offices should factor into the Court's decision.

      Yet, Thunder Marine does not contend that the forum selection clauses are unreasonable or otherwise invalid but rather asserts that the clauses are not applicable to its claims against Brunswick.

      **1.    The Parties to the Agreements**

      Thunder Marine argues that Brunswick, the parent corporation, is not a party to the agreements containing the clauses—the agreements are between Thunder Marine and four subsidiaries of Brunswick.  Thunder Marine further contends that logic tells us that Brunswick uses independent corporate subsidiaries specifically to protect it against liability from the sale of its products to the dealers, the subject of the agreements.  However, Thunder Marine provides no citation to legal authority, as required by Local Rule 3.01(b), that a parent corporation cannot be held to a forum selection clause in a contract involving one of its subsidiaries.

      A range of transaction participants, whether parties or non-parties, are subject to forum selection clauses if these participants or their conduct are so closely related to the contractual relationship or transactions therein that their being bound is foreseeable.  *Lipcon*, 148 F.3d at 1299 (relying on *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-210 (7th Cir. 1993), where two non-party corporations were held to be "closely related" and, thus, subject to the contracting party's forum clause, based on the contracting party's ownership of a large percentage of the

corporate non-parties); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, at 514 (9th Cir. 1988).

Here, Brunswick, as the parent corporation of the various manufacturers that are parties to the agreements with Thunder Marine, can be considered "closely related" to the contractual relationship depending on its involvement, financially or otherwise, with these transactions under the agreements.

Thunder Marine cites *Baker v. LeBoeuf, Lamb, Lieby & Macrae* where the Court found that a United Sates law firm acting as general counsel for an English insurance underwriting syndicate could not invoke a forum selection clause existent in an agreement between the underwriting members of the syndicate and the syndicate itself. 105 F.3d 1102, 1106 (6th Cir. 1997). The Court made a distinction between the lawyers of the syndicate and the entities of the syndicate stating that the law firm and its partners were not in the same position as an entity of the syndicate. *Id*. Therefore, since there were no claims against the syndicate or any of its entities, the claims against the law firm did not have the necessary connection to any such claims so as to be considered "closely related" to the contractual matter between the members and the syndicate. *Id*.

In this case, the Court does not find the relationship between attorneys or general counsel and a syndicate client analogous to the relationship between Brunswick and its subsidiaries because corporate subsidiaries can certainly be considered entities of a parent corporation. True, the claims, here, are against the parent corporation not against the entities that are parties to the agreements, but, depending on the circumstances of Brunswick's involvement with its manufacturers' contractual relationships, the necessary connection can still exist for Brunswick to be considered "closely related" and, therefore, subject to the forum selection clause. However, without such facts regarding Brunswick's involvement, the Court cannot find that Brunswick is "closely related" to the contractual matters of its subsidiaries.

CASE NO. 8:06-CV-384-T17 EAJ

## 2.    The Scope of the Forum Selection Clause

Prior to determining the validity of a forum selection clause, a court first must decide whether the scope of the forum selection clause encompasses the particular claims asserted in the lawsuit by considering whether resolution of the claims relates to interpretation of the contract, whether the claims are dependant upon the existence of a contractual relationship between the parties, and by comparing the operative facts of the case with the operative facts of a parallel claim for breach of contract if one were to be brought. *Terra Int'l., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997) (setting forth the general rules as to whether the scope of a forum selection clause encompasses tort claims); *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998) (considering the language of the contract to analyze the connections between the claims and the subject of the contract and between the claims and the contractual relationship in order to decide if the claims were covered by the forum selection clause).

The language of the forum selection clauses in Thunder Marine's agreements refers to any action between Subsidiary and Dealer "arising out of or in connection with"[3] the agreement or transactions related to the agreement.  While the terms "arising out of" and "in connection with" are determined by various courts to be considerably broad forum clause phrases, these terms are not without bounds. *Smith v. Lucent Technologies, Inc.*, L 515769, *9 (E.D. La. 2004). Where a cause of action is broader than the forum selection clause in that it is not dependant upon the relationship embodied in the agreement, not connected to any terms in the agreement, not derived from the rights granted in the agreement, and involves acts by the defendant wholly unrelated to the agreement, it does not *arise out of* the agreement, and, therefore, the forum selection clause does not apply. *Stewart Org., Inc.*, 810 F.2d at 1070 (finding that tort claims were subject to a forum selection clause which included the phrase "arising under or in connection with this Agreement" where the claims originated from the relationship embodied in the agreement); *Armco, Inc. v. N. Atlantic Ins. Co.*, *Ltd.*, 68 F.Supp.2d 330, 338-339 (S.D.N.Y. 1999) (holding that a cause of action for breach of fiduciary duty is not governed by a forum selection clause even though the clause in question included the language "aris[ing] out of or in connection with"); *Smith*, L 515769, at *11-13; *Farmland Industries, Inc. v. Frazier-Parrott*

---

[3] The forum selection clause at issue also uses the phrase "relating to" in addition to the phrase "arising out of or in connection with."  Since the phrase "relating to" is found to be synonymous with the phrase "in connection with," the Court has not separately referred to the phrase "relating to."  *Smith*, L 515769, *8.

*Commodities, Inc.*, 806 F.2d 848, 853 (8th Cir. 1987) (*abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989)) (holding that a forum selection clause did not apply to claims of breach of *fiduciary* duty, fraud, and securities violations);.

Here, the claims of unfair competition, violation of fair trade, and breach of fiduciary duty, rather than being dependant upon the contractual relationship existent for the sale of marine products between Thunder Marine and Brunswick's subsidiaries, are purportedly based on an entirely new venture—a partnership between Thunder Marine and Brunswick for the purchase and development of waterfront real estate.  Furthermore, although Brunswick may very well have a program that encourages dealers of its subsidiaries to share with Brunswick proposals for the acquisition of waterfront property, no facts support the premise that a dealer-manufacturer relationship is required in order to enter into a joint venture with Brunswick for the acquisition of real estate.  No facts show that Brunswick would not partner with any entity regarding a waterfront real estate purchase if it saw fit to do so.  So, the mere fact that the dispute would not have occurred but for the contractual relationship between Brunswick's subsidiaries and Thunder Marine is not enough to frame the causes of action as dependant upon the contractual relationship.  *See Armco, Inc.*, 68 F.Supp.2d at 339 (finding that the scope of the forum selection clause did not encompass the claims where the "gist" of the claims was not dependant upon the terms or relationship embodied in the contract).

Furthermore, the claims originating from the alleged new venture are neither connected to any sales terms or transactions in the agreement nor are they derived from any rights regarding sales of marine products granted in the agreement.  Indeed, the terms in each of the four agreements specifically limit the agreement to transactions involving the subsidiaries' particular products listed therein by stating that the agreements do not concern any other products.  Further, the sales agreements neither envision nor discuss acquisition of real estate nor do they mention a dealer program encouraging joint ventures for the purchase of real estate such that a party could contemplate that such claims could be brought in light of the business relationship of the agreement.  *See Anselmo v. Univision Group, Inc.,* WL 17173, at *1 (S.D.N.Y. Jan. 15, 1993).  Therefore, resolution of the claims is in no way related to the terms, transactions, or interpretation of the sales agreements.

Likewise, when comparing the operative facts of Thunder Marine's claims of breach of fiduciary duty, unfair competition, and violation of fair trade with the operative facts of a hypothetical claim of breach of contract based on obligations in the parties' agreements, no similarities exist.  The operative facts of the claims before the Court are relevant to the alleged

**CASE NO. 8:06-CV-384-T17 EAJ**

joint venture between the parties for the purchase and development of waterfront property and include facts concerning the acts and communications of the parties about inspection, development, advertising, and acquisition of the available property.  On the other hand, a claim for breach of contract would consist of entirely unrelated facts concerning the purchase, sale and service of a particular brand of marine products.  In addition, the present claims involve operative facts regarding actions by Brunswick that involve business dealings with Marine Max, an entity entirely unrelated to the agreements between Thunder Marine and Brunswick's subsidiaries.  *See Farmland Industries, Inc.*, 806 F.2d at 852 (finding a forum selection clause did not apply where the plaintiff alleged a fraudulent scheme involving matters and entities outside the scope of the agreement).  Thus, the operative facts of the claims brought forth and the operative facts of any hypothetical breach of contract claim are far from the same.

Courts have often compared forum selection clauses to arbitration clauses and have applied a similar enforceability analysis to both.  *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, at 519 (1974) (indicating that an agreement to arbitrate is a type of forum selection clause); *see Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997).  Accordingly, in its response, Thunder Marine analogizes to *Hersman, Inc. v. Fleming Companies, Inc.*, 19 F.Supp 2d 1282 (M.D. Ala. 1998), *aff'd by* 180 F.3d 271 (11th Cir. 1999), where a merchant's tort claims were not subject to a contractual arbitration clause because the claims asserted were wholly unrelated to and not dependant upon the contractual relationship between merchant plaintiff and supplier.  Similarly, in this matter, Thunder Marine's unfair competition, violation of fair trade, and breach of fiduciary duty claims are separate and apart from the contractual relationship embodied in the agreements.

Based on the foregoing, this Court finds that the causes of action are broader than the scope encompassed by the forum selection clauses, and, therefore, the Court holds that such clauses do not apply to this action.  Brunswick's motion to transfer venue is hereby DENIED.  Accordingly, it is

## V.     Conclusion

ORDERED that Plaintiff's Amended Motion to Supplement Response to Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue, dated April 18, 2006, (Dkt. 12-1), be **DENIED**, and that Defendant's Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue, dated March 9, 2006, (Dkt. 4), also be **DENIED**, and the defendant shall answer this complaint within ten (10) days of this order.

DONE AND ORDERED in Chambers at Tampa, Florida, this 6th day of July 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record.